# Abraham Lincoln Building & Homestead Association v. Anna Zuelk.

## Gen. No. 12,061.

1. RELEASE—*when cannot be relied upon.* The release of the lien of a trust deed cannot be relied upon where there is notice or ground for suspicion that the same is fraudulent.

2. EXTENSION AGREEMENT—*when valid.* An extension agreement signed by the maker of the notes but not signed by the holder thereof but accepted and acted upon by such holder, is valid.

3. ERROR—*what cannot be urged as.* Error which is advantageous to the party asserting it, cannot be urged as ground for reversal.

4. ERROR—*when deemed waived.* An error urged for the first time upon appeal is unavailing for purposes of reversal.

Foreclosure proceeding. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed December 22, 1905.

GEORGE W. HESS, for appellant.

FRANK SCHOENFELD, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an appeal from a decree in a foreclosure proceeding. July 18, 1898, one Albert G. Zamel executed a trust deed to one Charles C. Schumacher as trustee, conveying the real estate in controversy to secure Zamel's promissory note for $650 dated July 18, 1898, due four years after date, given according to a recital in the trust deed "as part and balance of the purchase money" of the land in question, which it appears Schumacher the trustee had conveyed to Zamel. The trust deed was recorded July 20, 1898, but the quit-claim deed conveying title from Schumacher to Zamel dated September 4, 1897, was not recorded until September 20, 1900, more than three years after its date. Meanwhile

appellee in good faith and before maturity purchased from Schumacher and received possession of the note and trust deed in controversy. Subsequently Zamel, maker of the note and trust deed, reconveyed the premises to Schumacher by quit-claim deed dated August 24, 1900, which was not recorded until September 20 following, upon which date the original quit-claim deed of September 4, 1897, from Schumacher to Zamel was also recorded. September 19, 1900, being the day before the record of these quit-claim deeds, Schumacher fraudulently caused to be recorded a release of appellee's trust deed, which release was executed by himself as trustee and bears date of September 17, 1900.

It appears therefore that upon September 20, 1900, the record showed that Zamel, the maker of the note and trust deed in controversy bearing date July 18, 1898, had title at the last mentioned time by quit-claim deed dated September 4, 1897, to the land in said trust deed described; that subsequently, August 24, 1900, Zamel had reconveyed to Schumacher the land, which was then subject to the lien of said trust deed also running to Schumacher as trustee; that Schumacher as trustee had released said trust deed of record September 19, 1900, before the maturity of the note for $650 thereby secured which by its terms would not become due until July, 1902. The title therefore as shown by the records upon September 20, 1900, stood in Schumacher apparently, free and clear of all incumbrances, except that the record also showed that appellee's note had not matured when the trust deed securing it was released, that said note had been given by its maker for part of the purchase money of the land, and that the release was executed by Schumacher as trustee after he had acquired the legal title to the land which was thus subject to appellee's lien. These facts taken together should, we think, have put any subsequent purchaser or mortgagee on inquiry to ascertain whether the release of appellee's trust deed by Schumacher, who was himself seeking to obtain a loan on the land and was manifestly interested to have it appear that the land was free from any lien, was or was not fraudulent.

There is evidence tending to show that Schumacher borrowed from appellant $5,500 for which he gave a trust deed on the same land dated August 24, 1900, and recorded September 21, 1900; that August 7, 1901, he borrowed an additional $3,500 secured by trust deed of that date recorded August 12, 1901; that September 19, 1902, Schumacher borrowed $9,000 from appellant secured by trust deed of that date recorded October 2, 1902. It thus appears that all of these trust deeds were recorded after September 20, 1900, the date of the record of Schumacher's original quitclaim deed to Zamel, maker of the note and trust deed in controversy. Under our recording laws the deed first filed and recorded is given the preference. Delano v. Bennett, 90 Ill., 533–534; Simmons v. Stum, 101 Ill., 454–456. Unless therefore appellant had a right to rely on the release deed fraudulently executed and recorded by Schumacher it had record notice of the validity and priority of appellee's trust deed when each and all of appellant's trust deeds were recorded.

Appellee's counsel insists that this fraudulent release of appellee's trust deed before the maturity of the indebtedness thereby secured is absolutely null and void. It is apparent that the fraudulent release of appellee's trust deed without payment of the debt thereby secured did not discharge the lien between the original parties nor as to any subsequent purchaser or mortgagee with notice of the fraud. There were, as we have said, facts shown by the record which should, we think, have put a reasonable person upon inquiry as to the good faith and honesty of the release. There was nothing in the note to give ground for supposing that it might be paid before its maturity. Had it been payable "on or before" four years from its date the situation might have been different; but this note was not so payable and suspicion, sufficient at least to put appellant on inquiry as to the good faith of the release, might and should, we think, have been excited by the fact appearing of record that the trustee who released was the holder of the fee upon which he was seeking to obtain loans from appellant. It is only

"in the absence of any notice or ground of suspicion" that appellant had a right to rely upon the record for protection. Lennartz v. Quilty, 191 Ill., 174–179–180. In Keohane v. Smith, 97 Ill., 156, it is said (p. 159): "knowing the note was not due and would not be for years to come, he ought to have inquired whether Runyan (in this case Schumacher) was still the holder and could rightfully receive payment (in this case release the trust deed) and not to do so was gross carelessness. As was said in Anderson v. Warne, 71 Ill., 20, the rule of law is, where one of two persons must suffer loss he who by his negligent conduct made it possible for the loss to occur must bear it."

It is urged by appellant's counsel that an extension agreement executed only by Zamel, the maker of the note, and after his interest in the mortgaged premises had ceased by reason of his quit-claim to Schumacher, was invalid and that hence it was error to base any part of the decree upon the interest notes executed by Zamel pursuant to such extension agreement. It is true the agreement was not signed by appellee, but it seems to have been accepted and acted upon by her. The extension notes given in pursuance of it seem to have been accepted by appellee and as between the parties there seems to have been a ratification of the agreement. Appellant's brief and the abstract prepared by its counsel refrain from stating what was the rate of interest provided for by the original note in controversy given by Zamel for $650. Appellee's counsel state that the rate was seven per cent per annum. The extension agreement as shown by the abstract, and the coupon notes given in accordance therewith, reduced the rate to six per cent per annum. If therefore the extension agreement is to be treated as invalid, appellee would be entitled to more interest than the decree awards her. Appellant cannot be heard to complain of an error which is beneficial to it. Ashley v. Mercier, 163 Ill., 486–493. In any event advantage cannot be taken of such alleged error—if error it was—when the objection is made for the first time in this court. Grand Lodge v. Bagley, 164 Ill., 340–342, and cases cited.

The judgment of the Superior Court will be affirmed.

*Affirmed.*